# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MITCHELL L. MOSELY, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 13-0198-CV-W-BP-P |
| | ) |
| RHONDA PASH, | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Mitchell L. Mosely, Jr., filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on February 15, 2013, seeking to challenge his 2008 conviction and sentence for second degree domestic assault, which was entered, after a jury trial, in the Circuit Court of Jackson County, Missouri.

The petition raises eleven grounds for relief: (1) that the trial court erred in allowing improper bolstering of witness testimony; (2) that the prosecution fabricated evidence, and selectively prosecuted petitioner based on discrimination and prejudice, resulting in prosecutorial misconduct; (3) that trial counsel was ineffective for failing to cross-examine or impeach the state's expert witness; (4) that the trial court erred in admitting evidence of petitioner's prior bad acts; (5) that the trial court abused its discretion by allowing fabricated evidence to be admitted, and "by allowing the state and an eye-witness to obtain immunity"; (6) that the motion court erred in denying petitioner's ineffective assistance of counsel claims; (7) that the motion court erred in denying petitioner's claim that insufficient evidence existed to convict petitioner; (8) that the motion court erred in denying petitioner's prosecutorial misconduct claim; (9) that the motion

court erred in denying petitioner's abuse of discretion claim; (10) that the motion court erred in failing to address all of petitioner's claims; and (11) that petitioner's constitutional rights were violated by certain witnesses' fabricated testimony.

Respondent contends that several of petitioner's grounds for relief are procedurally defaulted, and the remaining grounds are without merit.[1]

## SUMMARY OF THE FACTS

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> In December 2005, Mosely [f.n. 1] and H.E. were engaged to be married. On the evening of December 13, Mosely got angry with H.E. because she arrived home late from work and had spent what he thought was too much money on their fast-food dinner. He "went off on" her and punched her in the face. As H.E. was lying on the floor, she raised her feet up in the air to protect herself from Mosely's punches. Mosely accused her of kicking him. He then took off one of his boots and started beating her on the head with it, saying "See how that boot feels?" He continued to hit her hard in the head and face with his boot and fists. Later, Mosely made her sit in a tub of hot water to wash the blood off of her.
>
> > [f.n. 1] In the record, the appellant's last name is spelled alternatively as "Mosely" and "Mosley."
>
> The next morning, Mosely demanded H.E. give him her bus pass. When she refused, he kicked her in the stomach and "tore up" the apartment looking for her purse. She finally gave him the bus pass. He punched her in the face and proceeded to leave for work. As he was leaving, she told him not to come back. Mosely threatened to stalk and kill her.
>
> Although injured and in pain, H.E. walked from their apartment to a bus stop approximately forty blocks away. She then took a bus to her place of employment to pick up her paycheck. When she arrived, her co-workers immediately noticed that something was wrong with her. Her face was very swollen, one of her eyes was

---

[1] Respondent contends that there are 10 grounds for relief in the petition. However, the Court takes judicial notice that petitioner raises 11 grounds for relief. Grounds 1, 2, 5, 6, 7, 8, 9, 10, and 11 are procedurally defaulted, and grounds 3 and 4 are without merit.

swollen shut, and her nose appeared to be broken or twisted. According to one of the co-workers, "[h]er face was just kind of completely mutilated[.]" H.E. told her co-workers that her boyfriend had done it to her. The police were notified.

One of H.E.'s co-workers drove her to the apartment to meet the police. When the police officer arrived and saw the severity of H.E.'s injuries, he immediately called an ambulance. H.E. told the officer her boyfriend had beaten her up, and she described the incident that had happened the previous night. She was upset and scared, but she cooperated with the police. The ambulance took H.E. to the hospital.

At the hospital, H.E. told a physician what Mosely had done to her, and she gave a formal statement detailing the incident to a detective from the Kansas City Police Department's Domestic Violence Unit. H.E.'s injuries from the incident included a collapsed left lung, a rib fracture, broken bones in her face, her nose, and around her eye, a broken tooth, a bump on the side of her head, and a cut and a bump on her temple. She spent eight days in the hospital before being released.

Mosely was subsequently charged, as a prior and persistent offender, with one count of first-degree domestic assault, in violation of Section 565.072, RSMo 2000 [f.n. 2]. A jury trial was held. At trial, H.E.'s co-workers, the officer who met her at her apartment on December 14, her daughter, the investigating detective who interviewed her in the hospital, and the hospital physician testified to what H.E. told them about the incident on December 13 and 14, 2005, and the cause of her injuries.

> [f.n. 2] All statutory references are to the Revised Statutes of Missouri 2000.

H.E., however, testified that her injuries occurred when she fell twice on the sidewalk on December 13. She testified that she and Mosely did have a disagreement that day, but she physically attacked him first. She claimed Mosely struck her only in self-defense. She also testified that she remembered speaking with her co-workers, the police, and the hospital physician, but she could not remember what she told them. In fact, she had no recollection of what she told anyone about the incidents on December 13 and 14. When confronted with her previous statements about Mosely having beaten her, H.E. said she did not remember making those statements and they were untrue. Mosely also testified that H.E. was the

aggressor and he hit her back only in self-defense.

(Doc. No. 13, Ex. 6, pp. 2-4).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[2] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **GROUND 3 – INEFFECTIVE ASSISTANCE OF COUNSEL**

In ground 3, petitioner contends that trial counsel was ineffective for failing to fully cross-examine and/or impeach the state's expert witness. In order to succeed on a claim of ineffective assistance of counsel, petitioner must establish that: (1) his counsel's performance was unreasonable as viewed in the totality of the circumstances; and (2) his defense was prejudiced by counsel's action in that there is a reasonable probability that, but for counsel's unprofessional acts, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694-95 (1984); Schaeffer v. Black, 774 F.2d 865, 867 (8th Cir. 1985). Reasonably effective assistance of counsel may be defined as the skill and diligence that

---

2 "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

a reasonably competent attorney would exercise under similar circumstances. See, e.g., Strickland v. Washington, 466 U.S. at 687-90. Judicial scrutiny of counsel's performance must be highly deferential, id. at 689, and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

On appeal from the denial of his Rule 29.15 motion, the Missouri Court of Appeals disposed of petitioner's claims as follows:

> In his sole point on appeal, Mosley claims that the motion court clearly erred in denying his motion for postconviction relief. He asserts that counsel was ineffective in failing to cross-examine State's witness, Dr. Ellison, and present evidence concerning her alleged inconsistent statements and purported assertion of new opinions with respect to the injuries and number of blows sustained by the victim.
>
> Appellate review of the denial of a postconviction motion is limited to determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009). Findings of fact and conclusions of law are clearly erroneous only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *Zink*, 278 S.W.3d at 175 (quotes and citations omitted).
>
> On a claim of ineffective assistance of counsel, the burden is on the movant to prove by a preponderance of evidence that (1) counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and (2) counsel's failure prejudiced him. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A strong presumption exists that counsel's conduct was reasonable and effective. *Id.* at 176. To show prejudice, the movant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.*
>
> Reasonable trial strategy choices, no matter how unfortunate their appearance in hindsight, cannot be the sole support of a claim of ineffective assistance. *Borst v. State*, 337 S.W.3d 95, 105 (Mo. App. W.D. 2011) (citing *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006)). Choices in strategy made following a "thorough

investigation of the law and the [sic] facts relevant to plausible opinions [sic] are virtually unchallengeable[.]" *Anderson*, 196 S.W.3d at 33 (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). It is rarely appropriate for courts to second-guess choices by counsel where such investigation has been made. *Id.* (citing *Middleton v. State*, 103 S.W.3d 726, 736 (Mo. banc 2003)). Pursuit of one reasonable trial strategy to the exclusion of another is not ineffective assistance of counsel. *Id.* (citing *Worthington v. State*, 166 S.W.3d 566, 573 (Mo. banc 2005)).

The decision whether or not to impeach a witness is presumed to be a matter of trial strategy. *Wren v. State*, 313 S.W.3d 211, 219 (Mo. App. E.D. 2010) (citing *State v. Gollaher*, 905 S.W.2d 542, 548 (Mo. App. E.D. 1995)). If the decision to decline to impeach a witness with certain evidence is based on the goal of preventing other, adverse evidence from being admitted, it is a reasonable strategic choice. *Id.* Failure of trial counsel to impeach a witness is insufficient to show ineffective assistance of counsel unless such impeachment would have provided a defense for the defendant or altered the outcome of the trial. *Gabaree v. State*, 290 S.W.3d 175, 181 (Mo. App. W.D. 2009) (citing *State v. Ferguson*, 20 S.W.3d 285, 506-07 (Mo. banc 2000)).

Mosley alleges that counsel was ineffective in failing to impeach Dr. Ellison by cross-examining her regarding alleged inconsistencies in her testimony from her recorded statement and the first trial to the second trial. He asserts that Dr. Ellison described additional injuries increased from three to five or six. He contends that the only apparent reason for the change in testimony was the need to bolster the State's case in the second trial. The motion court did not clearly err in finding that counsel was not ineffective in failing to cross-examine the doctor about the alleged inconsistencies. First, counsel did cross-examine Dr. Ellison about the broken tooth and the inconsistency in her testimony:

> Q: And you have given testimony before in a hearing; is that correct, in this matter?
> A: Yes
>
> Q: Now, at that time you didn't mention a broken tooth?
> A: No
>
> Q: So this is new information that you're testifying to now?

A: Yes

Additionally, the broken tooth injury was contained in the medical records, which were introduced at both trials. Counsel then used the inconsistency to attack the doctor's credibility in closing argument and further noted that there was no evidence that the tooth injury was the result of a blow. Regarding the lacerations, Dr. Ellison concluded in the recorded statement and first trial that the victim did not suffer any lacerations to her temporal region but testified at the second trial that the victim had a cut and bump at her temple. While the doctor stated that she reviewed all of the medical records and that she discussed all of the injuries about which she would testify at trial, she also stated that she was relying on her memory of the medical records during the interview. When asked by defense counsel if there was anything she had discussed with prosecutors that had not been discussed yet in their interview, Dr. Ellison responded:

> Not that I can recall. I haven't had a chance to look at what we discussed previously. So, I'm going off the medical record as I can remember it. So, um, I don't want to be a liar. I'd have to look at the previous transcript, but, this is how I recall the case.

Finally, and most importantly, the record reveals that counsel chose not to impeach Dr. Ellison regarding the injuries and number of blows to the victim as a matter of trial strategy. Counsel testified at the evidentiary hearing that she did not want the jury to hear any more about the injuries than they needed to hear. She said she did not want to pinpoint all the injuries in the case, and wanted to get Dr. Ellison off of the stand as quickly as possible. Counsel testified the injuries were very damaging to their case and that her decision not to cross-examine Dr. Ellison further about the injuries may have been strategic. She remembered not wanting to "harp on the injuries" any more than was necessary. Trial counsel's decision not to impeach Dr. Ellison any further was made with sound judgment based on reasonable trial strategy. The alleged inconsistencies were negligible in number and significance, and to pursue them further would have only served to repeat and detail the unfavorable evidence against Mosley.

The inconsistencies in Dr. Ellison's statement and testimony alleged by Mosley were minor and immaterial. Emphasizing them at trial through additional cross-examination and presentation of evidence would not have given Mosley a defense, nor would it have changed

the outcome of the trial. Mosley's defense was that the victim was the initial aggressor in a fight between him and her, and that she was only struck twice. Dr. Ellison's testimony from the time of the pretrial recorded statement through the second trial was that the victim was struck at least four times. The medical records support the testimony Dr. Ellison gave in the trial resulting in Mosley's conviction. Given the weight of the evidence supporting the guilty verdict, it was unlikely that some attempted impeachment of Dr. Ellison would have yielded a different outcome. The trial court did not clearly err in denying Mosley's motion for postconviction relief.

The judgment is affirmed.

(Doc. No. 13, Ex. 12, pp. 4-8).

The resolution of ground 3 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).[3] Applying the Strickland standard of review to the facts as set forth in the record, the Court finds that counsel was not ineffective.

Ground 3 is denied.

## GROUND 4

In ground 4, petitioner contends that the trial court erred in admitting evidence of

---

[3] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. at 1523.

petitioner's prior bad acts. This ground for relief raises evidentiary issues. "Questions relating to the admissibility of evidence are matters of state law and generally do not give rise to constitutional errors which are subject to redress in federal habeas corpus cases." Harrison v. Dahm, 880 F.2d 999, 1001 (8th Cir. 1989) (quoting Maggitt v. Wyrick, 533, F.2d 383, 385 (8th Cir.), cert. denied, 429 U.S. 898 (1976)). Only if the alleged error violates a specific constitutional right or is so prejudicial that it denies due process may a federal court grant habeas corpus relief on a state evidentiary issue. Clark v. Groose, 16 F.3d 960, 963 (8th Cir. 1994).

Furthermore, on direct appeal, the Missouri Court of Appeals held as follows:

### STANDARD OF REVIEW

> The circuit court has broad discretion to determine the admissibility of evidence. *State v. Davis*, 226 S.W.3d 167, 169 (Mo. App. 2007). On appeal, we will not disturb the evidentiary ruling absent a clear abuse of that discretion. *Id.* An abuse of discretion occurs when the circuit court's ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.*

### ANALYSIS

> Mosely first argues that H.E.'s application for an order of protection, in which she detailed the events of December 13, 2005, and a prior incident of abuse on December 11, 2005, was inadmissible hearsay. "Hearsay is defined as an out of court statement offered to prove the truth of the matters asserted." *State v. Archuleta*, 955 S.W.2d 12, 16 (Mo. App. 1997). Hearsay evidence is inadmissible unless it falls within an exception to the hearsay rule. *Id.*

> Section 491.074 provides an exception to the hearsay rule for prior inconsistent statements in criminal trials: "Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of a criminal offense shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement." To determine whether an inconsistency exists between a witness's trial testimony and statements the witness made prior to trial, we

consider "the whole impression and effect of what has been said and done." *State v. Blakenship*, 830 S.W.2d 1, 9 (Mo. banc 1992).

In H.E.'s testimony at trial, she denied that Mosely struck her in the week leading up to the December 13 and instead claimed she sustained her injuries from falling twice on the sidewalk. She also testified that she instigated an argument with Mosely that night and threw a tape measure at him, kicked him in the groin, bit him, and scratched him. She contended it was only after she physically attacked him that he punched her one time in the face and threw a boot at her, which bounced off the floor and hit her in the head.

In her application for an order of protection, however, she said that Mosely "blacked my eye on Sunday, December 11, 2005. He hit me in the face with his fist." Regarding the December 13, 2005 incident, she said:

> Mitchell hit me in the face with his fist on the right side. He hit me with a boot on the right side of my face and on the top of my head. He kicked me with his boot in the chest. My ribs are broken on the left side and I have a collapsed lung. I also have a fracture on the left side of my [sic] under my eyes.

H.E.'s statements in the application were substantially different from her trial testimony. Hence, her application for an order of protection constituted a prior inconsistent statement.

To admit H.E.'s prior inconsistent statement into evidence, the State was required to lay the proper foundation. *Archuleta*, 955 S.W.2d at 16. "The only necessary foundation is the inquiry as to whether the witness made the statement, and whether the statement is true." *State v. Bowman*, 741 S.W.2d 10, 14 (Mo. banc 1987) (footnote omitted). "'If a witness professes not to remember if a prior statement was made or not made, a proper foundation has been laid to admit the prior inconsistent statement.'" *Archuleta*, 955 S.W.2d at 16 (citation omitted).

H.E. testified that she recalled someone assisting her in filling out the application for the order of protection while she was in the hospital. She acknowledged that her signature was on the last page of the application. She claimed to have no memory of what she told anyone about the incident while she was in the hospital, however, and she denied that the statements in her application were true. The State laid the proper foundation for admitting the

application for the order of protection pursuant to Section 491.074 as H.E.'s prior inconsistent statement. *See State v. Matchett*, 69 S.W.3d 493, 499 (Mo. App. 2001).

Nevertheless, Mosely argues that the court should not have admitted the application because it contained H.E.'s statements that, two days before the incident, "[he] blacked my eye," and "[h]e hit me in the face with his fist." Mosely asserts these statements constituted evidence of prior uncharged misconduct, which the State improperly used to show his propensity to abuse.

Evidence of prior uncharged misconduct is inadmissible for the purpose of showing the defendant's propensity to commit such crimes. *State v. Johnson*, 161 S.W.3d 920, 924 (Mo. App. 2005). This evidence is admissible, however, for the purpose of establishing: "(1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial; (6) a signature modus operandi." *Id.* At 924-25 (footnote omitted).

To be admissible for one of these purposes, the evidence must be both logically and legally relevant. *State v. Chism*, 252 S.W.3d 178, 184 (Mo. App. 2008). "Evidence is logically relevant when it has some legitimate tendency to establish clearly the defendant's guilt for the crime charged and is legally relevant when the probative value outweighs the prejudicial effect." *Id.*

Evidence of a similar level and type of prior abuse may logically show that a defendant intended to harm the victim. *Id.* At 185. If intent is not a legitimate issue in the case, however, the prejudicial effect of evidence of prior abuse outweighs its probative value and such evidence is not legally relevant. *Id.* Intent becomes an issue in a case "when the defendant claims his actions were accidental or in self-defense." *Id.*

Mosely's defense theory was that H.E. lost her temper, went "crazy," and kicked, scratched, and bit him before he hit her back, once with his fist and once with a boot, to defend himself. Mosely put his intent at issue when he claimed that he struck H.E. only in self-defense after she physically attacked him. Thus, evidence that he struck her in the face with his fist two days earlier was logically relevant to show that he was not acting in self-defense and, in fact, intended to harm her when he used his fists and boot to strike

her repeatedly in the face and head on December 13, 2005. The prior abuse was both logically and legally relevant to show Mosely's intent to harm H.E.

Furthermore, we note that, contrary to Mosely's contention, the State did not use evidence of prior abuse to argue his propensity to abuse. In fact, the only party who mentioned the prior abuse in closing arguments was Mosely. During the closing, Mosely asserted that H.E.'s statement about having a black eye on December 11 was a lie because one of her co-workers testified that she did not see H.E. with a black eye within the week before December 14. There was no improper commentary by the State.

The circuit court did not abuse its discretion in admitting H.E.'s application for an order of protection. Finding no error, we deny the point on appeal.

### CONCLUSION

The judgment of conviction is affirmed. Rule 30.25(b).

(Doc. No. 13, Ex. 6, pp. 4-9).

The resolution of ground 4 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).

Ground 4 is denied.

### **GROUNDS 1, 2, 5, 6, 7, 8, 9, 10, & 11 – PROCEDURAL DEFAULT**

Petitioner's remaining grounds are procedurally defaulted. In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate

> procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986).

A review of the record shows that petitioner did not present the claims at issue on appeal from the denial of his Rule 29.15 motion. Therefore, those claims are procedurally defaulted and may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not present any valid explanation for why these grounds were not pursued on appeal from the denial of his Rule 29.15 motion and, therefore, has failed to demonstrate cause for his procedural default. As a result, we do not consider prejudice. The Court, however, can still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence . . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of grounds 1, 2, 5, 6, 7, 8, 9, 10, and 11.

He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of grounds 1, 2, 5, 6, 7, 8, 9, 10, and 11 is barred.

Grounds 1, 2, 5, 6, 7, 8, 9, 10, and 11 are denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.


      /s/ Beth Phillips  
BETH PHILLIPS  
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  January 16, 2014.